**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
ARCH SPECIALTY INSURANCE COMPANY,

                                             Plaintiff,                **REPORT AND**
                                                                   **RECOMMENDATION**
                    -against-                           CV 23-8146 (NJC) (ARL)

LYTER GROUP, INC.,

                                             Defendant.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       The plaintiff, Arch Specialty Insurance Company ("Arch"), commenced this action on November 1, 2023, against the defendant, Lyter Group, Inc. ("Lyter"), asserting claims for breach of contract, unjust enrichment and accounts stated. On March 4, 2024, Arch moved for a default judgment. That motion was referred to the undersigned by District Judge Choudhury. For the reasons set forth below, the undersigned respectfully recommends that the plaintiff's motion for a default judgment be denied with leave to renew.

BACKGROUND

**A.    Factual Background**

       The following facts are taken from the complaint as well as the plaintiff's motion for a default judgment and the exhibits attached to that motion. Arch is an insurance company organized under the laws of the State of Missouri with a principal place of business at Harborside 3, 210 Hudson Street, Suite 300, Jersey City, New Jersey 07311. Compl. ¶ 1. Lyter is a corporation organized under the laws of the State of New York with a principal place of business at 100 Motor Parkway, Suite 107, Hauppauge, New York 11788. *Id.* ¶ 2.

       According to the complaint, Arch issued a Commercial General Liability Insurance Policy to Lyter effective November 16, 2018 to November 16, 2019 ("the Policy"). *Id.* ¶ 6. In

exchange for the payment of premiums under the Policy, Arch agreed to provide insurance coverage for certain liabilities of Lyter. *Id.* ¶ 7. Pursuant to the Policy's terms, the initial premium of $34,453.00 was based on information submitted by Lyter and/or its insurance agent/broker on Lyter's behalf regarding Lyter's estimated exposure during the effective dates of coverage. *Id.* ¶ 9; *see also* Pellitteri Decl. Ex. A. Because the initial premium was based on estimated information, the Policy was subject to an audit to determine the actual exposure during the effective dates of coverage. Compl. ¶ 10. Specifically, the Policy includes an "Annual Minimum and Deposit Premium Endorsement" that modifies the common policy conditions as follows:

> The premium designated in this Policy as "advance premium" is a minimum and deposit premium, which shall be credited to the amount of the earned premium due at the end of the policy period.
>
> At the close of each period . . . designated in the Declarations as the audit period, the earned premium including any premium adjustments . . . shall be computed for such period and upon notice therefor to the Named Insured, shall become due and payable.

Pellitteri Decl. Ex. A. The Commercial General Liability Coverage Form, also annexed to the Policy, further provides:

> 5. Premium Audit
>
> a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.
>
> b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

*Id.*

On January 8, 2020, a representative of Arch conducted an audit for the period between December 1, 2018 and December 1, 2019. *Id.* Ex. B. The auditor determined that an additional premium of $76,285.00 was owed by Lyter to Arch. *Id*. Ex. C.; Compl. ¶ 11. According to the complaint, Arch "billed and/or issued demands for payment" of the Additional Premium based on the audit report and Lyter failed to remit the payment of $76,285.00. Compl. ¶ 13; Pellitteri Decl. ¶ 13.

Arch also alleges that Lyter is obligated to pay a New York State Surplus Lines Tax and a New York State Stamping Fee equal to 3.6% and 0.18% of the Additional Premium, respectively ("New York State Taxes and Fees"). *Id*. ¶ 14. The total New York State Taxes and Fees amounts to $2,883.57. *Id.* To date, Lyter has refused to pay the premium balance or the New York State Taxes and Fees, which Arch alleges is due and owing.

### B.     Procedural Background

As indicated above, Arch filed the complaint in this action on November 1, 2023. ECF No. 1. The summons and complaint were served on Lyter by service on the New York State Department of State on November 6, 2023. ECF No. 9. On December 21, 2023, Arch filed a request for a certificate of default with the Clerk of the Court. ECF No. 10. Twelve days later, the Clerk of the Court certified that Lyter had failed to answer or otherwise move with respect to the complaint. ECF No. 12. On March 4, 2023, Arch filed the instant motion for a default judgment. ECF No. 14. Despite being served with a copy of the motion by regular mail, to date, Lyter has not opposed the motion for default judgment or responded in any way.

## DISCUSSION

### A.     Legal Standards Governing Default Judgments

3

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments.  First, the Clerk of the Court enters the party's default.  Then, as here, a motion for a default judgment is made to the district court judge.  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true").  However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted).  A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged."  *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound*, 973 F.2d at 159.

### B. Breach of Contract Claim

A breach of contract action is generally pleaded by stating "(1) the terms of the contract, (2) the performance by the plaintiff of [its] obligations, (3) the breach by the defendant, (4) damages, and (5) consideration." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord*

4

*Kausal v. Educ. Prods. Info. Exchange Institute*, 105 A.D.3d 909, 910, 964 N.Y.S.2d 550 (2d Dep't 2013).[1] Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007) (citing *Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 384 (2d Cir. 2006)).

In this matter, Arch and Lyter entered into an insurance agreement in which Arch agreed to provide coverage in exchange for the payment of a premium. Compl. ¶¶ 6-7. Pursuant to the Policy, the parties agreed that Lyter's initial premium was based on an estimate and that an audit could result in the imposition of additional premiums. *Id.* ¶¶ 9-10. Arch conducted an audit and determined that Lyter owed an additional premium amounting to $76,285.00. *Id.* ¶ 11. Pursuant to the terms of the policy, upon notice to Lyter, the additional premiums became due and payable. Pellitteri Decl. Ex. A. These allegations satisfy the first element of the breach of contract claims.

However, it is less clear if Arch's allegations satisfy the second element, that being, the performance by the plaintiff of its obligations under the contract. Arch boldly alleges in the complaint that it performed its contractual obligation and provided coverage to Lyter. *Id.* ¶ 8. Arch also states that it "billed and/or issued demands for payment for the outstanding amount to Lyter in a timely fashion." *See id.* ¶ 13; Pellitteri Decl. ¶ 13. Although Arch has provided the Court with a copy of the Policy, the Audit Report, and the Audit Endorsements for the Policy reflecting the Additional Premium owed, it has chosen not to provide documentary evidence of

---

[1] The Court notes that the plaintiff cites to New York law. The Policy does not contain a choice-of-law provision but Lyter is a New York corporation with a principal place of business in New York. "[I]n a default judgment context, where the moving party relies on New York law and no party has challenged its application, the court should rely on New York law." *Arch Specialty Ins. Co. v. B & V Constr. Inc.*, No. 23-CV-2429 (NGG) (LGD), 2024 WL 1739862, at *4 (E.D.N.Y. Apr. 23, 2024).

5

its demand for payment. Since the premium adjustment is only due and payable upon notice to the insured, in the abundance of caution, the undersigned recommends that the motion be denied at this time with leave to renew upon a showing that the notice was timely made.

Moreover, Arch has not established a breach of contract claim for the New York Taxes and Fees. Although Arch alleges in the complaint that Lyter was obligated to pay the New York State Taxes and Fees, *see* Compl. ¶ 14, nothing in the Policy or the additional evidence submitted by Arch supports that claim. *See Arch Specialty Ins. Co. v. B & V Constr. Inc.*, No. 23-CV-2429 (NGG) (LGD), 2024 WL 1739862, at *5 (E.D.N.Y. Apr. 23, 2024) (citing *Arch Specialty Ins. Co. v. M. Lopez Contracting Corp.*, No. 19-CV-7024, 2021 WL 7830147, at *4 (E.D.N.Y. Mar. 10, 2021) ("While the Complaint and Pellitteri Declaration both state that Defendant was 'obligated to pay' the NYS Taxes and Fees, there is no allegation that the Policy required Defendant to pay those fees to Plaintiff. Nothing in the Policy or the papers submitted by Plaintiff indicates an obligation by Defendant to pay the NYS Taxes and Fees to Plaintiff, whether to compensate Plaintiff for paying its taxes, or otherwise.")).

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant upon receipt and shall file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60

6

(2d Cir. 1996).

Dated: Central Islip, New York
       October 15, 2024

                                                    _____/s/_____
                                                 ARLENE R. LINDSAY
                                               United States Magistrate Judge